UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHARLES A. BENSON,

    Petitioner,

v.                                              CAUSE NO. 3:18-CV-671-DRL-MGG

WARDEN,

    Respondent.

## OPINION & ORDER

Charles A. Benson, a prisoner without a lawyer, filed a habeas corpus petition challenging a prison disciplinary proceeding at the Miami Correctional Facility (MCF-18-06-0074) in which a disciplinary hearing officer found him guilty of battery in violation of Indiana Department of Correction Offense A-102. Mr. Benson was sanctioned with a loss of 180 days of earned time credits and a demotion in credit class. ECF 10-7.

The charge was initiated on June 5, 2018, when Officer B. Herrington wrote a conduct report stating as follows:

> On 6-5-18 at approximately 4:30PM I, Officer B. Herrington was on post and shutting the water off for Cell 801 in RHU. While shutting the water off, Offender Benson, Charles #202702 was tossing an unknown liquid through the crack in the door striking me in the arm and top of my head myself and Officer Wagoner's face.

ECF 10-1. Officer J. Wagoner also wrote the following witness statement:

> On Tuesday June 5, 2018 I officer Wagoner witnessed officer Harrington [sic] being assaulted with an unidentified liquid that was thrown through the crack of the door striking him in his head and left arm while shutting the water off to cell location RHU-801.

ECF 10-2. Mr. Benson was charged with violating A-102 of the Disciplinary Code for Adult Offenders, which is defined as "[k]nowingly or intentionally touching another person in a rude,

insolent, or angry manner; or in a rude, insolent, or angry manner placing any bodily fluid or bodily waste on another person."[1] ECF 10-3.

Mr. Benson was notified of the charge, pleaded not guilty, and requested a lay advocate. ECF 10-4. He also requested that witness statements be obtained from the inmates housed in cells 804 and 809. *Id.* He requested "DVR" evidence from the prison's surveillance cameras; however, such evidence was unavailable. *Id.* Before the hearing, a statement was obtained from inmate Scott Carteaux, housed in cell 809. ECF 10-5. He said "Officer Petty was squeegeeing water back into Benson's cell." *Id.* Inmate Ryan Sims, housed in cell 804, provided the following written statement:

> On date of said incident I was looking down the range towards Mr. Bensons door while Officer Harrington was in the utility closet turning off Mr. Bensons water, while he was doing that Officer Petty was reckfully [sic] and forcefully pushing water back into Mr. Bensons and up against the wall near Officer Harrington, when Officer Harrington came out of the closet officer Petty apologized to Officer Harrington for accidentally getting any water on him then Officer Harrington stated to Officer Petty as they were leaving the range with Officer Wagner "don't worry I'm writing Mr. Benson up for it" then laughed.

ECF 10-6.

On June 8, 2018, the hearing officer held a hearing on the charge. ECF 10-7. Mr. Benson stated as follows in his defense: "How did this happen if he is in the area with the door open to block the opening of my cell door." *Id.* The hearing officer considered staff reports, Mr. Benson's statement, and the witness statements, and found him guilty, relying on the conduct report and the witness statement from Officer Wagoner. *Id.* Mr. Benson was sanctioned with the loss of 180 days of earned time credits, the loss of privileges, and a demotion in credit class. *Id.*

---

[1] The parties alternately refer to the charge as "assault" or "battery," but they agree Mr. Benson was found guilty of Offense A-102. The 2015 version of the Adult Disciplinary Code for Adult Offenders called Offense A-102 "assault/battery," whereas the 2018 version, which took effect the day prior to the incident giving rise to the charge in this case, calls Offense A-102 as "battery." *See* Disciplinary Code for Adult Offenders, Policy & Administrative Procedures App'x I (effective June 4, 2018); Disciplinary Code for Adult Offenders, Policy & Administrative Procedures App'x I (effective June 1, 2015). The definition of the offense has remained the same.

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charge; (2) an opportunity to be heard before an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Mr. Benson raises three claims in his petition: (1) that the evidence was insufficient; (2) he was denied an impartial hearing officer; and (3) that the sanctions imposed were unduly harsh. As a preliminary matter, the respondent argues that Mr. Benson's claims are all procedurally defaulted because he failed to raise them with the final reviewing authority. ECF 10 at 5-6. Before a petitioner can obtain federal habeas relief, he must exhaust all available state administrative remedies, and the failure to do so constitutes a procedural default precluding habeas relief. 28 U.S.C. § 2254(b)(1)(A); *Markham v. Clark*, 978 F.2d 993, 995-96 (7th Cir. 1992).

Upon review, the court agrees that Mr. Benson's claims are procedurally defaulted. He raised claims one and two in his appeal to the warden, but he did not raise claim three with the warden. ECF 10-8. Additionally, he did not raise any of the three claims in his appeal to the final reviewing authority, and he acknowledges as much in his petition. ECF 1 at 2-3; ECF 1-1. Nor has he demonstrated cause for this default. He argues in his traverse that the prison was negligent in processing his appeals, and that he never received the warden's response to his first-level appeal. The record reflects that the warden did in fact respond to the appeal on July 16, 2018. ECF 10-9. However, even if the court accepts Mr. Benson's account, he concedes in his traverse that he proceeded ahead with an appeal to the final reviewing authority. ECF 12 at 2; ECF 1-1. Yet he did not raise any of the three claims he asserts in this petition in the appeal to the final reviewing

authority, and instead chose to raise issues related to prison staff's handling of the first-level appeal. ECF 1-1. Under these circumstances, the court finds his claims to be defaulted.

Assuming *arguendo* that the claims are not procedurally defaulted, they would not entitle him to habeas relief in any event. Mr. Benson first claims that there was insufficient evidence to find him guilty. To satisfy due process, there must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). As this circuit has explained:

> This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. . . . It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). In other words, prison disciplinary bodies are entitled to resolve conflicts in the stories presented to them, as long as "some evidence" supports the decision. *Johnson v. Finnan*, 467 F.3d 693, 695 (7th Cir. 2006).

Here, there were conflicting accounts of the incident presented by Mr. Benson and prison staff. Mr. Benson's account, and that of his witnesses, was that another correctional officer got water on Officer Herrington, whereas Officer Herrington and Officer Wagoner attested that it was Mr. Benson who splashed liquid on them.[2] The hearing officer considered all of the witness statements, including those submitted by Mr. Benson, and chose to believe the officers. Their account constitutes some evidence to support the hearing officer's finding. Mr. Benson argues in his petition and traverse that he could not possibly have splashed the officers from where he was standing, but it is not the

---

[2] Although Officer Wagoner did not reference mr. Benson by name, he stated that the liquid was coming from the door of cell 801. ECF 10-2. There is no dispute that Mr. Benson was housed in cell 801 at the time of this incident. In his traverse, Mr. Benson explains that on the date of this incident, several inmates had intentionally flooded the range with toilet water. ECF 12 at 9. The officers were trying to determine the source of the flood and to disperse the water. *Id.* Mr. Benson denies throwing liquid on them, but he acknowledges that he was angry with them for pushing water under his cell door. *Id.*

province of this court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652. He has not established a due process violation.

Mr. Benson next argues that he was denied an impartial decisionmaker. Prison adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decisionmaker in the case. *Id.* However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.*

There is nothing in the record to indicate that the hearing officer was involved in any way in the events underlying the charge. Nevertheless, Mr. Benson claims that the hearing officer was biased because he told Mr. Benson "I understand, but my hands are tied," and "I'm just following orders" in response to Mr. Benson's explanation of what occurred. ECF 12 at 12. These statements are vague; and, for all they reveal, the hearing officer was referring to his duty to find an inmate guilty based on the evidence, even if he is personally sympathetic to their arguments. Additionally, the hearing officer submitted a sworn affidavit denying that he ever made such a statement to Mr. Benson, and Mr. Benson has not submitted any counter-affidavits in response. ECF 10-12. He has not overcome the presumption that the hearing officer was impartial. *See Wilson-El v. Finnan*, 281 F. Appx. 589, 592 (7th Cir. 2008).

Mr. Benson also claims that the sanction imposed was unduly harsh. However, the court will not find a due process violation if the sanctions imposed are within Indiana Department of Correction guidelines. *Jent v. Warden*, No. 3:19-CV-1017-DRL-MGG, 2020 WL 1323127, at *4 (N.D. Ind. Mar. 20, 2020). Here, Mr. Benson was found guilty of an A-level offense, and the maximum allowable punishment for such an offense is a one-level credit-class demotion and up to 6 months of lost earned

time credits. ECF 10-11. That is the sanction Mr. Benson received. He has not established a violation of his due process rights. To the extent he is trying to assert an Eighth Amendment violation, that Amendment forbids only "extreme" punishment that is "grossly disproportionate" to the crime. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997). That cannot be said of the sanction imposed here. Accordingly, Mr. Benson's claims are procedurally defaulted or otherwise without merit.

For these reasons, the court:

(1) DENIES the habeas corpus petition (ECF 1);

(2) DIRECTS the clerk to enter judgment in this case.

SO ORDERED.

June 25, 2020                                      *s/ Damon R. Leichty*
                                                   Judge, United States District Court